## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

MAROON SOCIETY, a California Corporation,

Plaintiff,

v.

UNISON CONSULTING INC., an Illinois Corporation, doing business in California,

Defendant.

No. 19 C 05117

Judge Mary M. Rowland

## MEMORANDUM OPINION & ORDER

For the reasons set forth below, Defendant's motion to dismiss is granted. Counts II and V are dismissed with prejudice. All other Counts are dismissed without prejudice. The Court grants Plaintiff leave to file an amended complaint by September 30, 2020. But if Plaintiff intends to replead a claim under California False Claims Act, (Count IV), it must first seek leave of court.

## BACKGROUND

The Court has gleaned the following factual background from Plaintiff's Complaint. Maroon Society (Maroon or Plaintiff), a California corporation, provides data compilation and data analysis services to various other entities. (Dkt. 1, ¶¶ 1, 8). Unison Consulting Inc. (Unison or Defendant), an Illinois corporation, is a consulting firm that provides guest satisfaction surveys for airports. (*Id.* at ¶ 2). Plaintiff was hired by Defendant as a subcontractor to participate in several survey projects

between 2011 and 2016. (*Id*. at ¶ 9). The crux of this suit derives from two subcontracts related to work performed for the Los Angeles International Airport ("LAX").

Plaintiff alleges that Unison entered into a prime contract ("2015 Prime Contract") with the City of Los Angeles ("City") on or about January 14, 2015 for LAX's 2015 Survey project ("2015 Survey"). (Dkt. 1, ¶ 10). Unison then entered into a subcontract with Plaintiff for the 2015 Survey on February 24, 2015 ("2015 Subcontract"). (*Id*. at ¶ 11). While Plaintiff was performing under the 2015 Subcontract, LAWA, the governmental authority in charge of operating LAX, released a request for proposal for the design and performance of guest satisfaction surveys at LAX. (*Id*. at ¶ 12). Unison requested that Maroon prepare a sub-bid to incorporate into Unison's bid for the request for proposal. Maroon submitted a sub-bid in the amount of $99,300. (*Id*. at ¶ 13).

Unison submitted its bid to LAWA. Plaintiff alleges that Unison's June 2015 bid identified Plaintiff as the subcontractor, but Unison unilaterally reduced the amount of Plaintiff's sub-bid to $88,505. (Dkt. 1, ¶¶ 14-15). When confronted in May 2016 about the sub-bid reduction, Defendant apparently represented to Plaintiff that it had reduced Plaintiff's sub-bid further to $80,450. (*Id*.). LAWA accepted Unison's bid and, on December 3, 2015, LAWA entered into a prime contract with Unison for the guest surveys at LAX ("2016 Prime Contract"). (*Id*. at ¶¶ 19-20). The term period in the 2016 Prime Contract stated: "…the term of this Contract shall commence on the Effective Date and shall expire no later than one (1) year thereafter, unless earlier terminated pursuant to the terms of the Contract. Notwithstanding the foregoing,

City shall have two (2) one-year option to extend the term of this contract…." (Dkt.1, Ex. C, 20).

In March 2016, Plaintiff alleges that it was not receiving timely payments for work under the 2015 Subcontract. (Dkt. 1, ¶¶ 29, 31). When Plaintiff confronted Unison, Unison promised to monitor the payment intervals by LAWA on behalf of Plaintiff and that Unison would grant Plaintiff an additional contract if Plaintiff continued working on the 2015 and 2016 surveys. (*Id.* at ¶¶ 31, 36). Plaintiff argues that Unison's response constitutes a binding oral agreement.

Plaintiff was apparently satisfied by Unison's response and continued to work on the surveys. In May of 2016, Unison had still failed to pay Plaintiff's invoices. Plaintiff then demanded full payment of outstanding invoices for that work. (Dkt.1, ¶ 31). At that time, Plaintiff learned that Unison had unilaterally reduced Plaintiff's sub-bid to $80,450 without Plaintiff's knowledge. (*Id.* at ¶ 32). Plaintiff attempted to negotiate with Defendant to have the subcontract reflect the original amount of the sub-bid, $99,300. The declaration attached to Plaintiff's response brief states that Plaintiff negotiated with Unison to have the written subcontract reflect the original $99,300 sub-bid, but that such efforts were unsuccessful.[1]

On June 20, 2016, despite the unilateral reduction in Plaintiff's sub-bid, Plaintiff and Defendant entered a written subcontract for the 2016 LAX survey work

---

[1] Plaintiff began performing work related to the 2016 Prime Contract before Plaintiff and Defendant entered into a written contract for that work. (Dkt. 1, ¶¶ 29. 33, 38). Plaintiff soon learned of a "series of omissions committed by Defendant." (Dkt. 58, 8).

3

("2016 Subcontract"). (Dkt. 1, ¶ 23).[2] The 2016 Subcontract included an Illinois choice of law provision.[3] The 2016 Subcontract also included the following integration clause: "Entire Agreement. This Agreement contains the entire agreement and understanding of the parties with respect to the subject matter hereof, and supersedes and replaces any and all prior discussion, representations and understandings, whether oral or written." (Dkt. 1, Ex. D, ¶ 19(j)). Regarding manner and timing of payment, the 2016 Subcontract states:

> Once each month, Subcontractor shall by the 10th day of each month prepare and submit to UNISON an invoice showing services performed, fees earned during the preceding month calculated in accordance with the Payment Schedule, and expenses incurred during the preceding month, together with such supporting documentation as may be required by UNISON. Unison shall pay the Subcontractor within seven (7) days after receipt of payment from [LAX] attributable to Subcontractor's services.

(*Id.* at ¶ 2(b)). The 2015 Subcontract has substantially similar terms, with the only difference being the last sentence which states: "Except as may otherwise be stated in the Payment Schedule, Unison shall use good faith efforts to pay Subcontractor within forty-five (45) days after receipt of Subcontractor's invoice…but not later than seven (7) days after receipt of payment from [LAX] attributable to Subcontractor's services." (Dkt. 1, Ex. B, ¶ 2(b)). Because Plaintiff was anxious about receiving timely

---

[2] The Court notes that this paragraph states: "Before any wrong was detected, however, MAROON SOCIETY and UNISON entered into a second subcontract for the performance of the Guest Satisfaction Surveys on or about June 20, 2016." (Dkt. 1, ¶ 23). However, paragraphs 15, 31, and 33 establish that Plaintiff knew Unison had not paid its invoices *before* the June 26, 2016 agreement was signed. And the Complaint states that Plaintiff knew Unison had lowered the amount of Plaintiff's sub-bid in March 2016 and May 2016, *before* entering into the June agreement. (Complaint ¶ 33) (Unison "admitted at or around [March or May 2016], that it had submitted a false and improperly inaccurate bid/budget on behalf" of Plaintiff.)

[3] The 2015 Subcontract included a California choice of law provision. (Dkt. 1, Ex. B, ¶ 19(e)).

payments, the parties added specific language to Schedule B of the Payment Schedule in the 2016 agreement. That language states:

> UNISON agrees to promptly submit its invoices to [LAX] and to use good faith efforts to obtain payment from [LAX] in accordance with [LAX's] prompt payment policies. If [LAX] has not paid UNISON within thirty (30) calendar days of UNISON's invoice to [LAX], UNISON will advise Subcontractor of payment status and continue to advise Subcontractor of payment status not less often than once every five (5) business days thereafter until payment is received from [LAX].

(Dkt. 1, Ex D, Payment Schedule ¶ 4). Those are the only terms regarding payment in the Subcontracts attached to Plaintiff's Complaint.[4] Contrary to Plaintiff's allegations, there is no requirement in either Subcontract that Unison pay Maroon "within seven (7) days of receipt by UNISON of [Maroon's] invoices." (Dkt. 1, ¶ 27).

Plaintiff alleges that after entering into the 2016 Subcontract, Unison breached the agreement by failing to timely submit invoices to LAWA. (Dkt. 1, ¶ 40). The Complaint contains no examples of the delay, but Plaintiff's response brief states that Plaintiff submitted an invoice to Unison on July 25, 2016 and that Unison did not submit the invoice to LAWA until October 13, 2016. (Dkt. 58, 10). Plaintiff allegedly confronted Unison in October 2016, demanding that Unison deposit its own money in an account, in advance of work performed, to ensure timely payment to Plaintiff. (*Id.* at ¶¶ 42, 44). Unison declined to do so.

In addition to failing to timely pay invoices, Plaintiff alleges that Unison made several misrepresentations to the City. Maroon alleges that Unison falsely told the

---

[4] The Court may consider documents attached to the complaint and referred to in the complaint without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *PharMerica Chi., Inc. v. Meisels*, 722 F.Supp.2d 938, 947 (N.D. Ill. 2011).

City that "MAROON SOCIETY was demanding 50% advanced payments on work not yet performed," (Dkt. 1, ¶ 47), and that Maroon was "delaying the project" and "refusing to perform work on the project." (*Id.* at ¶ 91). According to Maroon, Unison feared that Maroon would report Unison's violations to LAWA, and Unison made these representations in an attempt to disparage Maroon before Maroon could report the violations. (*Id.* at ¶ 47).[5]

Unison terminated the Subcontract in January 2017, at or around the same time Unison paid all of Maroon's outstanding invoices. (Dkt. 1, ¶ 49) Indeed, an earlier declaration of Aaron Celious, attached to Unison's motion to dismiss, states that "[a]t and around the time of Unison's termination of Maroon, Unison made payments on *all outstanding invoices* owed to Maroon." (Dkt. 51, Ex. 2, ¶ 53) (emphasis added).

Plaintiff's eight count Complaint asserts breach of contract, interference with prospective business relationship, fraud, negligence, trade libel, violations of the California False Claims Act and California's unfair competition law. Defendant moves to dismiss.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face." *Ill. Bible Coll. Ass'n v. Anderson*, 870 F.3d 631, 636 (7th Cir. 2017), *as amended* (Oct. 5, 2017), *cert denied sub nom. Ill. Bible Coll. Ass'n v. Cross*, 138 S. Ct. 1021 (2018). "A claim has facial plausibility when the plaintiff pleads

---

[5] In arguing for dismissal, and as discussed more below, Unison asserts that these allegedly false statements are asserted as true by Plaintiff in the Complaint. (Dkt 51, 9).

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "While a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her complaint to be considered adequate…." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges whether the court has subject matter jurisdiction to hear a case. Fed. R. Civ. P. 12(b)(1). If a court lacks subject matter jurisdiction, it "is without power to adjudicate" and the case must be dismissed. *Legacy Seating, Inc. v. Commercial Plastics Co.*, 65 F.Supp.3d 542, 548 (N.D. Ill. 2014) (citing *Stewart v. United States*, 199 F.2d 517, 519 (7th Cir. 1952)). When considering a factual challenge to jurisdiction, courts "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (quoting *Evers v. Astrue*, 563 F.3d 651, 656-57 (7th Cir. 2008)). Once challenged, the plaintiff must produce "'competent proof'—that is a showing by preponderance of the evidence"—that jurisdiction exists. *Legacy Seating*, 65 F.Supp.3d at 548 (citing *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003)).

## PROCEDURAL ISSUES

### A. Subject Matter Jurisdiction

Under 28 U.S.C. § 1332, federal courts have jurisdiction over civil suits between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332(a). The parties agree that the case has diversity of citizenship, as the suit is between a California entity and Illinois entity, but contest whether the amount in controversy has been met. Initially, a federal court reads a complaint liberally, accepting as true all well-pleaded allegations. However, once the party opposing federal jurisdiction challenges the allegations of jurisdictional facts, the party seeking the federal forum must demonstrate those facts by a preponderance of the evidence. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2008). Once that threshold is met, the case can be dismissed for lack of jurisdiction only if it is "legally certain" that the recovery from the judgment will be less than the amount in controversy requirement. *Id.* "[U]ncertainty about whether the plaintiff can prove its substantive claim…does not justify dismissal." *Id.*

Defendant points out that Maroon alleges diversity of citizenship, but fails to allege any amount in controversy in its Complaint. Defendant thus urged the Court to dismiss on this basis. In response, Maroon filed a second declaration of Aaron Celious and stated, for the first time in its response brief, that it is seeking the following damages: 1) $48,525 that Maroon could have earned if the 2016 Subcontract had not been terminated; 2) $84,297 to $94,297 that Maroon could have earned because the

2016 Prime Survey Contract was extended, and Maroon would have been the subcontractor under that extension had the 2016 Subcontract not been terminated; and 3) over $100,000 Maroon lost when not chosen by an unnamed private marketing company for an alleged consulting contract. (Dkt. 58, Ex. B, ¶¶ 23-24, 33; Dkt. 58, 14). The only evidence or "competent proof" that Plaintiff provides is the Celious declaration. Defendant repeatedly points out that these damages are not alleged anywhere in the Complaint.

Defendant argues that these damages cannot satisfy the jurisdictional requirements because none of them are recoverable as a matter of law under the claims actually alleged in the Complaint. The issue, therefore, is whether it is legally possible that the amount in controversy meets the minimum requirement. *See Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 999 (7th Cir. 2000). For example, Defendant argues that the only breach of contract theory alleged in the Complaint is that Unison failed to make timely payments under the 2016 Subcontract. This failure could not have proximately caused the damages cited (the $48,525 that Maroon could have earned if the 2016 Subcontract had not been terminated; and the $84,297 to $94,297 that Maroon could have earned because the 2016 Prime Survey Contract was extended). The two damage numbers cited by Maroon arise out of a wrongful termination claim, not a claim for failure to timely pay invoices. And as discussed more below, the Complaint only brings the latter claim. These damages are thus not cognizable under the breach of contract claim alleged. *See LM Ins. Corp. v. Spaulding Enterprises Inc.*, 533 F.3d 542, 554 (7th Cir. 2008) (finding jurisdictional amount not met

9

for fraud claims where damages claimed by plaintiff were not recoverable under a fraud theory). Indeed, Maroon has admitted that Unison cured any alleged payment breaches by paying all of Maroon's invoices for work performed under the 2016 Sub-contract. (Dkt. 51, Ex. 2, ¶ 53). The Court thus agrees that the $48,525 and $84,297 to $94,297 are not cognizable damages under Maroon's alleged breach of contract claim.

The Court additionally agrees with Defendant that the $100,000 Maroon allegedly lost when not hired by the unnamed private marketing company is likely not recoverable under Plaintiff's breach of contract theory as pled. However, Plaintiff brings more than a breach of contract claim. Plaintiff also asserts claims for fraud, trade libel, interference with a business relationship, and business defamation. Defendant has provided no arguments suggesting that the $100,000 is not recoverable under Plaintiff's other claims, and the Court is aware of none. Accordingly, the Court cannot say with a "legal certainty" that the potential recovery is less than the jurisdictional floor. *Sadowski*, 441 F.3d at 543. This $100,000 amount satisfies the amount in controversy requirement at this time. The Court shall exercise jurisdiction.[6]

## B. Choice of Law

A federal court sitting in diversity applies state law. *West Side Salvage, Inc. v. RSUI Indemnity Co.*, 878 F.3d 219, 223 (7th Cir. 2017). Plaintiff briefly and haphazardly asserts that California law should apply, despite an Illinois choice of law

---

[6] If Plaintiff files an amended Complaint, it *must* allege recoverable and cognizable damages in its amended complaint.

provision in the 2016 Subcontract. Defendant argues that Plaintiff has failed to demonstrate a conflict warranting a choice of law analysis.

"A district court is required to engage in a choice of law analysis only 'if there is a conflict between Illinois law and the law of another state such that a difference in law will make a difference in the outcome.'" *Board of Forensic Document Examiners, Inc. v. American Bar Assoc.*, 922 F.3d 827, 831 (7th Cir. 2019) (citing *West Side Salvage*, 878 F.3d at 223). It is incumbent on Plaintiff, "as the party seeking a choice of law determination, to 'establish the existence of an outcome-determinative conflict.'" *Id*. Plaintiff has failed to do so. It has not identified any conflicts between Illinois law and California law. It has only asserted that California law should apply. Because Plaintiff has not met its burden, the Court applies the law of the forum state, Illinois. *Id*. ("If the party fails to establish the existence of [ ] a conflict, the court applies the law of the forum state.").

## ANALYSIS

### A. Count I—Breach of Contract

Defendant argues that this claim must be dismissed because Plaintiff failed to allege that Defendant breached the contract and damages caused by that breach. Under Illinois law, a Plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages. *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Although Plaintiff references several contracts in the Complaint, Count I alleges a breach of only the 2015 Subcontract and the 2016 Subcontract.

The breach identified in the Complaint is that Unison failed "to pay as set forth in the agreement." (Dkt. 1, ¶ 54). The only payment obligation in the two Subcontracts was that Unison pay Maroon within seven days of receiving payment from the City. Despite the Complaint's incorrect allegation that Defendant was required to pay Plaintiff's invoices within seven (7) days of receipt, (Dkt. 1, ¶ 27), the contracts provide that Unisom pay Maroon with seven days *of receiving payment from the City.* There is no allegation that Unison failed to pay Maroon within seven days of receiving payment from the City.

Rather, Plaintiff alleges that Unison breached the Subcontracts by not submitting Unison's own invoices to the City in a timely manner. Yet there was no obligation to do so in either of the contracts. The 2015 Subcontract states that Unison shall use good faith efforts to pay Maroon's invoices within 45 days, but Unison was not *required* to do so. The 2016 Subcontract did not have this good faith provision, or any provision regarding submittal of Unison's invoices to the City. Without such a contractual provision, Plaintiff has failed to allege that Unison breached any of the Subcontracts terms. Plaintiff has accordingly failed to allege a breach of the Subcontracts based upon the timing of payments.

Defendant next argues that Plaintiff has failed to allege plausible damages from the alleged breach. As noted above, Maroon concedes in the declaration of Aaron Celious that Unison paid all of Maroon's invoices. (Dkt. 51, Ex. 2, ¶ 53). There are accordingly no damages alleged for breaching the Subcontract's payment terms. In its response brief, Maroon alleges reputational damages. Although the parties do not

identify any Illinois cases on point, it appears that courts consistently hold that reputational damages cannot be recovered under a breach of contract theory. *See Rice v. Community Health Ass'n*, 203 F.3d 283, 288 (4th Cir. 2000) ("Courts have universally rejected claims for damages to reputation in breach of contract actions reasoning that such damages are too speculative and could not reasonably be presumed to have been contemplated by the parties when they formed the contracts."); *Wilder v. Cody Country Chamber of Commerce*, 933 P.2d 1098, 1105 (Wyo. 1997) ("The district court properly ruled as a matter of law that [plaintiff's] business reputations damages were not proper under a breach of contract/promissory estoppel theory."); *O'Leary v. Sterling Extruder Corp.*, 533 F.Supp. 1205, 1209-10 (E.D. Wis. 1982) ("The courts seem to be in general agreement that damages for injury to reputation are not properly awardable in a breach of contract suit."). Accordingly, Plaintiff has failed to plausibly allege any recoverable damages.

In its response brief, Plaintiff posits a *new* theory of recovery—wrongful termination of the 2016 Subcontract. Maroon argues that the California Subletting Act, Cal. Pub. Cont. Code § 4100 *et seq.*, prohibited Unison from replacing Maroon on the 2016 Prime Survey Contract. The claims for wrongful termination and a violation of the California Subletting Act appear nowhere in Maroon's original Complaint, and Maroon cites to no relevant allegations in the Complaint. Maroon cites to *Holladay v. CME Group* to argue that it may provide new factual allegations in a response brief if the new allegations are consistent with the complaint. No. 11 C 8226, 2012 WL 3096698, at *2 (N.D. Ill. July 30, 2012).

Maroon is correct that courts have allowed plaintiffs to include additional factual material in responding to a motion to dismiss so long as those facts are consistent with the original complaint. However, "the Seventh Circuit has not authorized a plaintiff to embark on completely new avenues in his answer to a motion to dismiss that were not included in the complaint." *Ahr. v. Commonwealth Edison Co.*, No. 03 C 6645, 2005 WL 6115023, at *7 (N.D. Ill. Feb. 24, 2005). The *Ahr* Court stated:

> Plaintiffs do not seek to expand upon an issue already touched upon in the complaint. Plaintiffs have attached multiple affidavits to their answer to the motion to dismiss which contain an entire body of facts pertaining to the exhaustion of administrative remedies. Plaintiffs in essence seek to have that new body of facts to be incorporated into their complaint. If such a maneuver is allowed, a plaintiff could simply avoid a dismissal by shifting positions throughout the entire pleadings stage and the court and defendant would be uncertain as to what allegations the action is based upon.

*Id.* at *8. Such is the case here. Plaintiff has attached the declaration of Aaron Celious to add factual allegations regarding damages and the wrongful termination theory. The response brief includes a "Statement of Facts" section with enumerated paragraphs reminiscent of a Local Rule 56.1 statement of facts in support of summary judgment. Plaintiff is not merely adjusting a legal theory or expanding upon an issue touched on in the Complaint. Plaintiff is embarking on an entirely new avenue, new theory, new cause of action, new body of facts, and new theories of damages.[7] The

---

[7] Unison takes issue with the fact that Maroon claimed it was only seeking to recover damages to its reputation before the California district court, and has since changed positions in its response brief, adding allegations of breach of contract damages in the amount of $48,525, $84,297 to $94,297, and $100,000. *See* (Dkt. 21, 8) ("Unison does not address the fact that the gravamen of Maroon's complaint is rooted in tort, with the Complaint acknowledging that invoices under the 4 contracts were eventually paid by Unison but that Unison then engaged in unfair tactics, fraudulent representations, and trade libel to damage Maroon's business reputation."). It is clear that Maroon is not clarifying damages already alleged, but adding completely new theories of recovery.

Court will "not sift through Plaintiffs' answer to the instant motion and speculate as to what amendments to the complaint have been made via" the response brief, and "thereby speculate regarding the basis of this action." *Id.* Plaintiff has failed to state a claim for breach of contract based on wrongful termination. Count I is dismissed without prejudice.

## B. Count II—Breach of Oral Contract

Plaintiff's Complaint alleges that the parties entered into an oral agreement "around March of 2016 and May of 2016." (Dkt. 1, ¶ 62). The parties agreed that Unison would monitor LAWA's late payments and recommend Plaintiff for another upcoming survey contract, and in exchange Plaintiff would continue working on the guest satisfaction surveys. (*Id.*). Plaintiff alleges that Unison breached this agreement by failing to monitor LAWA's late payments and failing to recommend Plaintiff for the upcoming project. Defendant moves to dismiss this Count on two grounds: 1) Plaintiff has failed to allege consideration; and 2) the 2016 Subcontract contained an integration clause that supersedes an alleged oral agreement. While Plaintiff only responds to the first of these two arguments, the second is dispositive.

In order to plead the existence of a valid, enforceable contract in Illinois, a plaintiff must allege facts sufficient to constitute an offer, acceptance, and consideration. *See Tindall Corp. v. Mondelez Int'l, Inc.*, 248 F.Supp.3d 895, 904 (N.D. Ill. 2017). In Count II, Maroon alleges that the parties entered into an oral contract when Unison offered to manage and monitor the payments from LAWA and to recommend

Maroon for a future contract with the City. Maroon alleges that it accepted this offer by continuing to work on the 2016 Survey.

Assuming for the sake of argument that any oral agreement was supported by consideration, any oral promise allegedly made in March or May 2016 was superseded by the 2016 Subcontract. The 2016 Subcontract contains an integration clause which states that the Subcontract "supersedes and replaces any prior discussions, representations, and understandings, whether oral or written." (Dkt. 1, Ex D, ¶ 19(j)); *see Magnus v. Lutheran General Health System*, 235 Ill.App.3d 173, 182, 601 N.E.2d 907, 914 (1st Dist. 1992) (holding that written contract containing unambiguous integration clause supersedes all prior agreements on the same subject matter). The Court is persuaded that this integration clause supersedes any alleged oral agreement.

Plaintiff provides no response to Defendant's integration argument, instead asserting for the first time in the response brief that an oral agreement was entered into in October 2016, which would postdate the execution of the 2016 Subcontract. (Dkt. 58, 21). This allegation does not appear anywhere in the Complaint and, like the allegations in Count I, does more than expand on existing allegations. Plaintiff impermissibly attempts to amend the Complaint through its response brief with allegations that contradict the allegations contained in the Complaint.

Considering the new allegations, Plaintiff claims that the October 2016 promise "was supported by consideration in the form of Plaintiff's continued performance under the 2016 Subcontract despite Defendant's breach." (Dkt. 58, 21). This

allegation fails to properly allege consideration. Consideration cannot be something that the promisor is already obliged to give the promisee; it must be something additional or new. *In re Globe Bldg. Materilas, Inc.*, 484 F.3d 946, 949 (7th Cir. 2007). The performance of a legal duty already owed to a promisor is not consideration. *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 776 F.2d 198, 208 (7th Cir. 1985) ("Under the preexisting duty rule, agreement to do what one is contractually obligated to do is not valid consideration.").

Maroon does not allege that it gave anything additional or new in exchange for Unison's alleged promise. The only alleged consideration is Maroon's continued work on the 2016 survey—work it was already obligated to perform. Maroon's continued work cannot be consideration for Unison's alleged promises. In response, Maroon argues that Unison's promise was supported by consideration in the form of Plaintiff refraining from pursuing its breach of contract claim and Plaintiff's continued work on the 2016 survey before the written 2016 Subcontract. Plaintiff has provided no authority that the former constitutes valid consideration. And the latter is inapposite, as Maroon agreed to work on the 2016 Surveys before the alleged oral agreement. Maroon was thus obligated to perform that work, and that work cannot be the basis for new consideration.

Continuing to perform work that Plaintiff was legally obligated to perform cannot be sufficient consideration. Plaintiff has failed to state a breach of oral contract claim. Count II is dismissed with prejudice.

### C. Count III—Fraudulent Misrepresentation

Defendant argues that Maroon's fraudulent misrepresentation claim fails to comply with the heightened pleading standard of Rule 9(b). Unison identifies two specific issues with this Count. First, Unison argues that Plaintiff can only recover for misrepresentations made to Plaintiff; Plaintiff cannot recover for misrepresentations made to the City. Second, Plaintiff's Complaint establishes that Plaintiff could not have relied on the misrepresentations as Plaintiff knew they were false before entering into the 2016 Subcontract. Plaintiff fails to make responsive arguments, merely restating the allegations in the Complaint.

To state a claim for fraudulent misrepresentation in Illinois, a plaintiff must allege: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance on the truth of the statement; and (5) plaintiff's damages resulting from reliance on that statement. *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F.Supp.2d 846, 853 (N.D. Ill. 2011) (citing *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 591 (1996)). Maroon alleges that Unison misrepresented to the City the amount of Maroon's budget and Maroon's hourly rate. Maroon alleges that Unison misrepresented to Maroon: (i) that Unison was submitting invoices to the City on time; (ii) that Unison had reduced its contract price with the City; (iii) that Unison was unaware of the error in Maroon's budget; and (iv) that Unison was reducing Unison's fees. (Dkt. 1, ¶ 68).

The Court agrees with Unison that Maroon cannot recover for any misrepresentations made to the City. In order to recover, Unison must have made direct representations to Maroon, or Maroon must have specifically relied on the indirect statements made to someone else. *See Amerigas Propane, L.P. v. BP America, Inc.*, 691 F.Supp.2d 844, 853 (N.D. Ill. 2010) (plaintiffs could not maintain fraud claim where defendant had not made any false statements to them and they had not indirectly relied on any specific false statements). Maroon admits that at the time the misrepresentations were made to the City, it was unaware of them. (Dkt. 1, ¶¶ 38, 47) (stating that Plaintiff later learned of the misrepresentations made to the City). The alleged misrepresentations made to the City cannot support Plaintiff's claim for fraud.

With respect to false statement allegedly made to Maroon, the Court agrees that Maroon's allegations suggest that Maroon could not have relied on any of the alleged misrepresentations before entering into the 2016 Subcontract. Plaintiff's Complaint states that Plaintiff became aware of Unison's misrepresentations at the latest in May 2016. (Dkt. 1, ¶ 15). That is, Plaintiff knew the representations were false in May 2016. (Dkt. 1, ¶¶ 15, 31, 33). Plaintiff then executed the 2016 Subcontract in June 2016. Plaintiff has accordingly failed to allege that it relied on the truth of Unison's statements in entering the 2016 Subcontract. Plaintiff is not able to state a claim for fraudulent misrepresentation based on Unison's statements to LAWA. Count III is otherwise dismissed without prejudice.

### D. Count IV—California False Claims Act

Defendant contends Plaintiff fails to state a claim under the California False Claims Act ("CFCA"). Cal. Gov't Code § 12650 *et seq.* The CFCA is a whistleblower statute that allows individuals to bring a private action on behalf of the state of California or another political subdivision as a qui tam plaintiff to recover for a false claim on public funds. Section 12652(c) of the CFCA sets forth *specific procedures* that must be followed in order to bring such an action. The statute requires that the complaint be filed under seal and that notice be provided to the Attorney General. § 12652(c)(2)-(3). A plaintiff may continue to prosecute the action only if the Attorney General gives the court notice that the State does not intend to intervene and take over the case. § 12652(c)(6). Maroon does not allege that it followed any of these procedures in filing its Complaint. Dismissal is warranted on this basis alone. *See Chaffey Joint Union High Sch. Dist. v. FieldTurf USA, Inc.*, 2016 WL 11499348, at *4 (C.D. Cal. Apr. 28, 2016) (dismissing plaintiff's CFCA claim as deficient because there was no allegation that the action was brought by the Attorney General, or as a qui tam plaintiff). In response to Unison identifying these deficiencies, Plaintiff fails to allege that it followed the proper procedures. In fact, Plaintiff does not address Defendant's arguments or the procedural requirements at all. Plaintiff merely states that its claim is not frivolous, and that Defendant is only entitled to attorneys' fees incurred "excessively" to defend against the CFCA claim. (Dkt. 58, 23) (citing *John Russo Inds. Sheetmetal Inc. v. City of Los Angeles Dep't of Airports*, 29 Cal. App. 5th

378, 388 (2018)). There is no indication Plaintiff has met the CFCA procedural requirements.

For the foregoing reasons, the Court believes amendment to the CFCA claim may be futile. If Plaintiff seeks to raise a CFCA claim in an amended complaint, Plaintiff must first file a motion for leave to amend that addresses the issues raised herein. If Plaintiff pursues a CFCA claim without complying with the procedural requirements, the court will impose sanctions. Count IV is dismissed without prejudice.

### E. Count V—Negligence

Unison argues that this claim should be dismissed under the *Moorman* doctrine. Under the "economic loss rule" found in *Moorman Mfg. Co. v. Nat'l Tank Co.,* a plaintiff cannot recover solely economic loss under tort theories. 91 Ill.2d 69, 91 (1982); *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill.2d 146 (1986). "A plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract." *Anderson Electric*, 115 Ill.2d at 153.

Unison notes that Maroon alleges "no source of duty independent of the parties' contractual relationship, and pleads no conduct other than that on which it relies to allege breach of contract." (Dkt. 51, 19). Because Maroon's negligence claim is based on alleged obligations under the parties' Subcontracts, Unison argues, the negligence claim is barred by the *Moorman* doctrine. (*Id.* at 20). Unison further asserts that Maroon seeks damages only for economic losses. Plaintiff provides no arguments in response. Count V is dismissed with prejudice.

**F. Count VI—Intentional Interference with Prospective Economic Advantage**

In Illinois, to state a claim for intentional interference with a prospective economic advantage, a plaintiff must allege: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of such expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy; and (4) damage to the plaintiff resulting from the defendant's interference. *Kapotas v. Better Government Ass'n*, 2015 IL App (1st) 140534, 391 Ill.Dec. 302, 30 N.E.3d 572. Unison moves to dismiss this claim, asserting that Maroon has not alleged sufficient facts.

Unison first argues that Maroon has not alleged sufficient facts showing it had an expectation of entering into a contract with the City. To establish an actionable expectancy, a plaintiff must allege more than that it was involved in negotiations with a third party regarding a potential business relationship. *Hoopla Sports and Entertainment, Inc. v. Nike, Inc.*, 947 F.Supp. 347, 358 (N.D. Ill. 1996). "The hope of receiving a[n]…offer is not a sufficient expectancy. *Id.* (promoter of basketball tournament did not allege sufficient business expectancy where it alleged only that it had sought sponsorships from various companies); *see also Davidson v. Schneider*, No. 10 C 2101, 2014 WL 656780, at *6 (N.D. Ill. Feb. 20, 2014) (plaintiff did not establish sufficient business expectancy where it could not identify any individual customer with whom it had begun negotiations toward a potential sale).

Here, Maroon alleges that Unison "interfered with Maroon's prospective economic relations with [the City] for the additional survey project granted by the City

*to Unison* in 2017." (Dkt. 1, ¶ 84) (emphasis added). In Maroon's own allegations, Maroon acknowledges that any expectation it had of future work on City contracts was through Maroon's expectation that Unison would hire Maron as a subcontractor, not that the City would contract directly with Maroon. (Dkt. 1, ¶ 84). There are no allegations that Maroon had ever previously had any direct contracts with the City. In its response brief, Plaintiff asserts for the first time that it would have received additional survey work from the City, and that Plaintiff would have been a leading candidate for a prime bid under the City's 2018 request for proposal but for Defendant's interference. (Dkt. 58, 24). This additional information does little to save Plaintiff's claim. There are no allegations regarding negotiations, or a specific business arrangement between Plaintiff and the City. Plaintiff only identifies that it would have been the subcontractor for *Unison's* contract with the City, and that Plaintiff independently applied for a direct contract with the City for the first time in 2018. Plaintiff has failed to allege that it had a sufficient expectancy of a relationship with the City.

Unison next argues that any interference by Unison was privileged. Illinois recognizes that a defendant's interference is privileged if the defendant is acting to protect its own financial interest. *See Royal Imperial Group, Inc. v. Joseph Blumberg & Assoc., Inc.*, 240 Ill.App.3d 360. 608 N.E.2d 178 (1st Dist. 1992); *Bank Computer Network Corp. v. Continental Illinois National Bank and Trust Co. of Chicago*, 100 Ill.App.3d 492, 500-501, 442 N.E.2d 586, 592-93 (1st Dist. 1982). Where the defendant's conduct is privileged, the plaintiff bears the burden to plead and prove that the

conduct was unjustified. *MidAmerican Energy Co. v. Utility Resources Corp.*, No. 03 C 2313, 2003 WL 22359526, at *3 (N.D. Ill. Oct. 15, 2003). Unison claims that its representations to the City regarding Maroon's payment demands "could only be construed as an effort to maintain [Unison's] contract to perform the 2016 Survey." (Dkt. 51, 22). Unison asserts that it was acting to preserve its own economic interest, such action is privileged, and privileged conduct cannot form the basis of a tortious interference with prospective economic advantage. Plaintiff's brief provides no response to Unison's arguments that any alleged interference was privileged.

For the foregoing reasons, Count VI is dismissed without prejudice.

### G. Count VII—Trade Libel/Business Defamation

Count VII of Plaintiff's Complaint brings a claim for "Trade Libel/Business Defamation." In Illinois, trade libel (known as commercial disparagement) and business defamation are two distinct torts. *See Crinkley v. Dow Jones & Co.*, 67 Ill.App.3d 869, 876 (1st Dist. 1978); *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 269 (7th Cir. 1983). Business defamation occurs when the integrity or credit of a business has been impugned; trade libel or commercial disparagement occurs when the quality of the goods or services are demeaned. *Id.* The Complaint alleges that Unison made the following statements to the City: "Maroon was refusing to perform work on the project, and/or refusing to provide work unless it received an advance payment of 50% of work not yet performed; had been paid in full; was delaying the project; was in breach…." (Dkt. 1, ¶ 91). Maroon argues that it has stated a claim for trade libel because Defendant's statement disparaged Plaintiff's services by

suggesting "Plaintiff modified the terms of the subcontract without reason and that Plaintiff was refusing to perform the services required under the subcontract." (Dkt. 58, 26). Contrary to Maroon's assertion, these statements do not disparage the quality of Maroon's goods or services as required for a commercial disparagement claim. Maroon has thus failed to state a claim for trade libel or commercial disparagement. *See Crinkley*, 67 Ill.App.3d at 877.

To state a claim for business defamation in Illinois, a plaintiff must show: (1) falsity; (2) unprivileged publication; and (3) damages. *Green v Rogers*, 234 Ill.2d 478, 917 N.E.2d 450 (2009). This standard applies to both individuals and corporations. *See Brown*, 713 F.2d at 269. Unison argues that the Complaint admits the truth of the statements Unison allegedly made to the City. *See Philips v. Quality Terminal Servs., LLC*, 855 F.Supp.2d 764, 786 (N.D. Ill. 2012) (holding that true statements cannot support a claim for defamation because truth is an absolute defense to defamation). A defendant need only show the "substantial truth" of the alleged statements to establish this defense. *Id.* (citing *J. Maki Const. Co. v. Chicago Regional Council of Carpenters*, 379 Ill.App.3d 189, 318 Ill.Dec. 50, 882 N.E.2d 1173 (2d Dist. 2008)). Substantial truth is demonstrated when the defendant has shown that the "gist" or "sting" of the alleged defamatory statement is true. *Id*. Unison argues that the Complaint demonstrates the substantial truth of Unison's statements. For example, Maroon alleges that Unison misled the City by stating that Maroon was demanding advance payment for work not yet performed. (Dkt. 1, ¶ 47). Unison then points to paragraph 46 of the Complaint which states that Maroon requested monies be deposited

in an account before Maroon commenced work on the Surveys. (*Id.* at ¶ 46). Maroon alleges that Unison misled the City into thinking Maroon was not compliant with the Subcontract, yet Maroon's attached declaration alleges that it made extra-contractual demands after performance had already begun. *Compare* (Dkt. 1, ¶ 47) *with* (Dkt. 51, Ex. 2, ¶¶ 27, 36(b), 49). Maroon's Complaint thus support's Unison's argument that the alleged statements were substantially true.

In addition, Unison argues that its statements were privileged. "An otherwise defamatory statement is not actionable if made under a qualified privilege." *Phillips*, 855 F.Supp. at 786 (citing *Haywood v. Lucent Technologies, Inc.*, 169 F.Supp.2d 890, 916 (N.D. Ill. 2001) *aff'd by* 323 F.2d 524 (7th Cir. 2003)). Illinois law confers a privilege upon statements made within a legitimate business context. *Id.* (citing *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 381 F.3d 717, 727 (7th Cir. 2004)). If a qualified privilege is established, the communication becomes actionable only if the privilege was abused. *Id.* Unison argues that any statements made to the City regarding Maroon were privileged because they were made within the legitimate business context of Unison's prime bid with the City.

Plaintiff's counterarguments are rather unclear. Plaintiff appears to argue that Defendant's statements were misleading because Defendant did not inform LAWA that Plaintiff was making those demands as a result of not receiving payment. Maroon argues that Defendant's statement that Plaintiff was paid in full was false, as was Defendant's statement that Plaintiff was delaying the project. Plaintiff alleges that these statements served as pretext to remove Plaintiff from the survey project.

Because of these statements, Plaintiff claims that LAWA allowed Unison to remove Plaintiff as a subcontractor, LAWA rejected Plaintiff's bid for the 2018 Request for Proposal because it viewed Plaintiff as an unworthy business partner, and Plaintiff was deprived a consulting contract with a private marketing and media company. Plaintiff failed to counter Unison's arguments regarding privilege.

The allegations in the Complaint demonstrate that some of Unison's allegedly false statements were, according to the Complaint, true. Furthermore, as currently pled, the allegations indicate that Unison made these statements to the City in a business capacity. This claim as it is currently pled is deficient and is dismissed without prejudice.

## H. Count VIII—California's Unfair Competition Law

California's Unfair Competition Law ("UCL") prohibits any unlawful, unfair, or fraudulent business act or practice, deceptive or misleading advertising, and any act prohibited under certain chapters of the California Business and Professional Code. Cal. Bus. & Prof. Code § 17200 (West). There are three ways to bring a cause of action under the UCL: (1) alleging unlawful conduct that violates another law; (2) alleging fraudulent conduct likely to deceive members of the public; and (3) alleging unfair conduct relating to an actual or threatened impact on competition. *See Hadley v. Kellog Sales Co.*, 243 F.Supp.3d 1074, 1089 (N.D. Cal. 2017). Each "prong" of the UCL provides a separate and distinct theory of liability. *Id*. The "unlawful" prong borrows violations of other laws and treats them as an unlawful practice. *McVicar v. Goodham Global Inc.*, 1 F.Supp.3d 1044, 1053 (C.D. Cal. 2014). Under the fraudulent

prong, "it is necessary only to show that members of the public are likely to be deceived." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). Common law elements of fraud, such as actual falsehood, knowledge of falsity, and a victim's reliance on the false statements, are not required to show a violation of the UCL. *Id*. Maroon only asserts claims under the unlawful and fraudulent prongs.

In its opening brief, Unison argued that Maroon failed to allege facts sufficient to meet the first two prongs. For the unlawful prong, Unison argues that Maroon failed to allege facts showing Unison violated a predicate law. *See Tan v. GrubHub, Inc.*, 171 F.Supp.3d 998, 1010-11 (N.D. Cal. 2016) (where the UCL claim is premised on the same acts alleged in the complaint's other causes of action, and those causes of action fail, the UCL claims must likewise be dismissed); *see also Hadley*, 243 F.Supp.3d at 1089. Maroon's Complaint alleges that Unison violated the "Consumer Legal Remedies Act, California False Claims Act, California Whistleblower statutes, and various other laws, regulations, statutes, and/or commercial law duties." (Dkt. 1, ¶ 101). The Court already determined that Maroon has failed to state a claim under the California False Claims Act. Regarding the whistleblower statutes, Maroon fails to identify which specific whistleblower statute Unison allegedly violated. Maroon also fails to identify what "other laws, regulations, statutes, and/or common law duties" Unison violated. Any UCL claim on those bases must fail as Maroon has failed to allege sufficient factual material.

Unison additionally argues that Maroon has failed to state a claim under the Consumer Legal Remedies Act ("CLRA"). The CLRA protects ordinary consumers

from misleading advertisements of goods and services. *See Hadley*, 243 F.Supp.3d at 1089; Cal. Civ. Code § 1761(d) (defining "consumer" as an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes). Maroon does not allege that the City or Maroon is an ordinary consumer in this situation, and no other ordinary consumers are mentioned in the Complaint. Maroon has accordingly failed to state a predicate violation of the CLRA, and thus a violation of the UCL as well.

In response, Maroon once again adds additional factual allegations and legal theories not found in the Complaint. Maroon alleges that the predicate unlawful action was Unison's violation of the California Subletting Act. The California Subletting Act prohibits "bid chiseling," that is, where the prime contractor uses a public contract award to pressure its sub-bidders to further lower prices under threat of losing the work. *See R.M. Sherman Co v. W.R. Thomason Inc.*, 191 Cal. App. 3d 559, 567 (1987). Maroon alleges that Unison engaged in the practice of "bid chiseling" by unilaterally reducing Maroon's sub-bid from $99,300 to $88,505. Maroon also alleges that Unison used another LAWA contract to pressure Plaintiff to lower its sub-bid to $93,300. Finally, Maroon alleges that Unison removed Maroon from the survey project without following the procedures of the Subletting Act.

But there is no reference to the California Subletting Act or bid chiseling in the Complaint. Like the breach of contract claim above, Plaintiff is not merely adjusting a legal theory or expanding upon an issue touched on in the Complaint. The new allegations and theories go well beyond permissible modifications. Maroon cannot

amend its pleading by way of response brief. Plaintiff has accordingly failed to plead a UCL claim under the "unlawful" prong.

As for the "fraudulent" prong of the UCL, that prong relates to allegations of fraudulent conduct likely to deceive members of the public. In making a claim under this prong of the UCL, a plaintiff must satisfy the heightened pleading requirements of Rule 9(b). *Hadley*, 243. F.Supp.3d at 1090 (to satisfy Rule 9(b)'s standard for a UCL claim, a plaintiff must allege an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations; "plaintiff must set forth what is false or misleading about a statement, and why it is false"). Plaintiff's Complaint fails to satisfy these requirements. The Complaint fails to allege specific fraudulent conduct likely to deceive members of the public.

Plaintiff's response brief alleges that Unison engaged in deceptive and misleading conduct regarding the LAWA 2018 Request for Proposal. Plaintiff claims that, in response to the 2018 Request for Proposal, Defendant falsely asserted that that the subcontractor identified in Unison's bid had conducted over 100,000 passenger/rider surveys of which 30,000 were specific to airports, and that Unison and the subcontractor had worked together on several other airport survey project at Los Angeles, Bob Hope Burbank and Louis Armstrong New Orleans. (Dkt. 58, 29). According to Plaintiff, those characteristics describe Plaintiff's experience and relationship to Defendant, not the subcontractor Defendant used for the 2018 Request for Proposal. Plaintiff argues that Unison's misrepresentations "deceived LAWA into believing that the identified subcontractor was responsible for and completed similar work at

30

other airports." (*Id.*). Unison protests that these allegations are nowhere in the Complaint, Maroon has failed to allege that these representations harmed members of the public in any way, and any statements by Unison were made to the City not to Maroon.

The Court is persuaded by Unison's arguments. Plaintiff's new allegations regarding Unison's statements to LAWA do not belong in a response brief. Plaintiff's Complaint has failed to plead a UCL fraud count with the requisite particularity. Count VIII is dismissed without prejudice.

## **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is granted. Counts II and V are dismissed with prejudice. All other Counts are dismissed without prejudice. But if Plaintiff intends to replead a claim under California False Claims Act (currently Count IV), it must first seek leave of court. The Court grants Plaintiff leave to file an amended complaint by September 30, 2020.

E N T E R :

Dated: August 26, 2020

_____

MARY M. ROWLAND

United States District Judge

31