# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAROON SOCIETY, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNISON CONSULTING INC., <br><br> Defendant. | Case No. 19-cv-5117 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maroon Society Inc. ("Maroon") brings this breach of contract lawsuit against Defendant Unison Consulting Inc. ("Unison"). Unison hired Maroon as a subcontractor for a project providing guest satisfaction surveys at Los Angeles International Airport ("LAX"). For the reasons set forth below, Defendant's motion to dismiss [76] is granted in part and denied in part. Counts II and III survive the motion to dismiss. Counts I and IV are dismissed with prejudice.

## BACKGROUND

### I. The Court's Prior Opinion

In its original eight-count complaint, Maroon asserted breach of contract, breach of oral contract, interference with prospective business relationship, fraud, negligence, trade libel, and violations of California's False Claims Act and unfair competition law. (Dkt. 1). On August 26, 2020, this Court granted Unison's motion to dismiss. (Dkt. 72, "August 26 Order"). The breach of oral contract and negligence claims were dismissed with prejudice. *Id.* The Court dismissed the remaining counts

without prejudice and allowed Maroon to file an amended complaint. *Id*. Unison now moves to dismiss Maroon's four-count amended complaint.

## II. Amended Complaint

The following factual allegations are taken from Maroon's Amended Complaint (Dkt. 73) and are accepted as true for the purposes of this motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Maroon, a California corporation, provides data compilation and analysis to various private and public entities. (Dkt. 73, ¶¶ 1, 4). Unison, an Illinois corporation, provides consulting services for airports. (*Id.* at ¶¶ 2, 6). Unison hired Maroon as a subcontractor to provide consulting services on several projects between 2011 and 2016. (*Id.* at ¶ 7). While performing under a 2015 subcontract with Maroon ("2015 Subcontract"), Unison submitted a prime bid to the City of Los Angeles, Department of Airports ("LAWA"), incorporating Maroon's sub-bid. (*Id.* ¶¶ 8, 11). Unison's prime bid reduced the amount of Maroon's sub-bid from $99,300 to $88,505. (*Id.* at ¶¶ 14, 31). Unison designated Maroon as a Small Business Enterprise ("SBE") and certified that it would comply with the rules and regulations of the SBE program if awarded the contract. (*Id.* at ¶¶ 9, 12-13). Unison's prime bid was accepted by LAWA, and Unison entered into a prime contract on December 3, 2015, to design and conduct guest satisfaction surveys at LAX ("2016 Prime Contract"). (*Id.* at ¶ 16; *see also* Dkt. 77, Exh. C, "Prime Contract").

Maroon began work related to the 2016 Prime Contract before June 20, 2016. (*Id.* at ¶ 29). In March 2016, Maroon was not receiving timely payments from Unison

2

under the 2015 Subcontract. (*Id.* at ¶ 30). In May 2016, Maroon learned that Unison unilaterally reduced its sub-bid. Maroon entered into negotiations to have a subcontract for the 2016 Prime Contract reflect the original sub-bid of $99,300. (*Id.* at ¶¶ 31, 32). In June 2016, Maroon and Unison entered into a subcontract for Maroon to perform survey and data analysis for the 2016 Prime Contract ("2016 Subcontract"). (*Id.* at ¶ 34; *see also* Dkt. 77, Exh. B, "Subcontract"). Under the 2016 Subcontract, Maroon would be paid $93,300 for its work. (*Id.* at ¶ 38).

The 2016 Subcontract contains an integration clause, an Illinois choice-of-law provision, as well as the following payment provisions. (*Id.* at ¶¶ 36, 37, 39, 40). Section 2.b provides:

> Once each month, Subcontractor shall by the 10th day of each month prepare and submit to UNISON an invoice showing services performed . . . Unison shall pay the Subcontractor within seven (7) days after receipt of payment from [LAWA] attributable to Subcontractor's services. (Subcontract, §2.b).

In Exhibit B, titled Payment Schedule:

> UNISON agrees to promptly submit its invoices to the Client and to use good faith efforts to obtain payment from Client in accordance with Client's prompt payment policies. If Client has not paid UNISON within (30) calendar days of UNISON's invoice to the Client, UNISON will advise Subcontractor of payment status and continue to advise Subcontractor of payment status not less than once every five (5) business days thereafter until payment is received from the Client. (*Id.*, Exh. B).

After performing certain work under the 2016 Subcontract, Maroon submitted invoices to Unison. The first, in the amount of $13,410 ("First Invoice") and the second for $37,365 ("Second Invoice"), in July and August of 2016 respectively. (*Id.* at ¶¶ 43, 44). Unison did not submit the invoices to LAWA until October 13, 2016. (*Id.* at ¶ 45).

3

Unison did not pay Maroon on the First Invoice until October 24, 2016. (*Id.* at ¶ 47). Around this time, Maroon requested that Unison pay all outstanding invoices and deposit 50% of the remaining balance of future work into an account to ensure timely payment. (*Id.* at ¶ 48). Unison declined to do so. On November 2, 2016, Dr. Aaron Celious, owner and operator of Maroon, emailed Unison stating that "[a]s soon as [Unison] cures the breach of contract, as specified in the notice I sent last week, I'd be happy to have a call about meeting LAWA's needs." (*Id.* at ¶ 49).

Maroon also claims that Unison falsely told LAWA in November 2016, that "all outstanding invoices to Maroon Society have been paid" and that Maroon was refusing to discuss future tasks "until 45 days after advance payment is made." (*Id.* at ¶ 51). On December 1, 2016, Unison stated that it paid "in good faith" and that Maroon was "non-compliant" with the subcontract. (*Id.* at ¶ 52). Unison did not issue payment for the Second Invoice until December 1, 2016. (*Id.* at ¶ 53).

In December 2016, Unison issued a notice of default to Maroon and submitted a request to LAWA to add another subcontractor, Anik International ("Anik"), to the survey project. (*Id.* at ¶¶ 55, 56). In its request, Unison stated that Maroon was "not able to provide the services and staff" required for the project. (*Id.* at ¶ 56). LAWA approved the request to add Anik on December 29, 2016. Unison issued a notice of termination to Maroon on January 16, 2017. (*Id.* at ¶¶ 58, 59).

At the end of February 2017, Unison informed LAWA that Maroon was no longer a subcontractor and inquired about removing Maroon from its list of subcontractors. LAWA's Procurement Services Division ("PSD") informed Unison that Maroon would

4

need to provide written confirmation that it could not or would not provide the services in order to be removed. (*Id.* at ¶¶ 63, 64). As of March 2017, PSD had not approved a request for substitution. (*Id.* at ¶ 65). Before December 14, 2017, Unison submitted a Subcontractor Utilization Form stating that "Maroon Society was replaced by Anik, as approved by PSD." (*Id.* at ¶ 66). PSD had not approved a request to replace Maroon with Anik as the subcontractor on the project. (*Id.* ¶ 67).

Maroon's Amended Complaint asserts breach of contract (failure to make timely payments), breach of contract (wrongful termination), violation of the California Subletting and Subcontracting Fair Practices Act, and business defamation.

## ANALYSIS

### I. Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations",

5

but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

## II. Choice of Law

The parties agreed that the 2016 Subcontract would be "governed and construed in accordance with the laws of the State of Illinois, without regard to choice of law principles." (Subcontract, §19.d). It is well-settled under Illinois law that the Court "respects the contract's choice-of-law clause as long as the contract is valid" and not contrary to public policy. *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000). Maroon acknowledges this general rule. (*See* Dkt. 73, ¶36; Dkt. 79, 2).

This Court previously rejected Maroon's request to apply California law. (August 26 Order). Reviving the issue again, Maroon argues this time that because Illinois does not have the California SBE Program and Subletting Act, that creates an

6

outcome-determinative conflict. (Dkt. 79, 2). *See West Side Salvage, Inc. v. RSUI Indemnity Co.*, 878 F.3d 219, 223 (7th Cir. 2017) ("The party who seeks a choice-of-law determination must establish the existence of an outcome-determinative conflict."); *see also Vencor, Inc. v. Webb*, 33 F.3d 840, 844–45 (7th Cir. 1994) (applying Illinois choice of law rules to determine if parties' choice of law provision governs).

In Illinois, courts adhere to choice-of-law provisions unless "(1) the chosen state has no substantial relationship to the parties or the transaction; or (2) application of the chosen law would be contrary to a fundamental public policy of a state with a materially greater interest in the issue in dispute." *Brown and Brown, Inc. v. Mudron*, 887 N.E.2d 437, 439–40 (Ill. App. Ct. 2008).[1]

Maroon argues that applying Illinois law would create a result "contrary to the fundamental policy of [California] which has a materially greater interest in the subject matter of the litigation." (Dkt. 79, 2, citing *Hendricks v. Novae Corporate Underwriting Ltd.*, 868 F.3d 542, 545 (7th Cir. 2017)). Maroon focuses on California's "materially greater interest" but does not identify what "fundamental policy" of California is at issue or how applying Illinois law would be contrary to that policy. *Cf. Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 825-28 (N.D. Ill. 2019) (upholding New York choice-of-law provision even though defendants identified a fundamental public policy in California against restrictive covenants). Maroon refers to the California SBE Program and Subletting Act but does not argue that either represents a "fundamental policy" of California and does not explain how Illinois law

---

[1] Maroon does not argue that Illinois has no substantial relationship to the parties or the transaction.

7

would be contrary to either.[2] In sum, because the parties expressly agreed to be bound by Illinois law and because Maroon has (again) failed to overcome the presumption favoring choice-of-law contractual provisions, the Court applies Illinois law.

### III. Count I – Breach of Contract (Timely Payments)

A plaintiff claiming breach of contract in Illinois must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Unison seeks dismissal of Count I for failure to allege breach and resulting damages. (Dkt. 77, 9).

In its Amended Complaint, Maroon claims breach of contract based on untimely payment, relying on provisions in both the sub and prime contracts. (Dkt. 73, p. 15, ¶¶ 80-83). Maroon argues that under the 2016 Prime Contract, Unison had "a contractual obligation to timely submit invoices to LAWA to ensure prompt payment," and the failure to submit documentation to LAWA delayed Unison's payment to Maroon. (Dkt. 79, 7-8). The provisions in the 2016 Prime Contract Maroon relies on are sections 5.3 and 22.4. (Dkt. 73, p. 15, ¶¶ 81-82). Section 5.3 states in part that "[Unison] shall submit a separate monthly request[] for payment for Services completed during the billing period." (Prime Contract, §5.3). Section 22.4 states in part that Unison "shall submit, on a monthly basis, together with its invoice for payment the SBE Utilization Form…LAWA will not process or pay [Unison's] subsequent invoices if the SBE Utilization Forms are not timely submitted…" *Id*.

---

[2] In any event, since Count III is not a claim for breach of contract and the parties agree that California law governs that count, the Court applies California law to Count III.

8

§22.4. And the 2016 Subcontract provides that Unison "agrees to promptly submit its invoices to the Client [LAX] and to use good faith efforts to obtain payment from [LAX] in accordance with [LAX's] prompt payment policies." (Subcontract, Exh. B). Other than the requirement that Unison pay Maroon within seven days of receiving payment from the LAWA (Subcontract, §2.b; Prime Contract, §5.13.1), however, Maroon does not identify any required timeframe for it to be paid by Unison.

Even assuming Maroon had sufficiently alleged a breach, the Court already rejected Maroon's argument that its damages arose from Unison's untimely payment. (August 26 Order). Unison argues, relying on this Court's prior opinion and Dr. Celious's own declaration, that "[b]ecause there are no amounts owed Maroon for work it performed, it has no untimely payment damages." (Dkt. 77 at 9). The Court agrees that Maroon still has not sufficiently pled that its claimed damages resulted from a breach of the sub or prime contract's payment provisions. Maroon does not address Dr. Celious's sworn statement that Unison paid all invoices owed to Maroon. (Dkt. 51, Ex. 2, ¶ 53). Instead Maroon claims damages of approximately $42,000 (the difference between the value of the subcontract and what Maroon was paid) and the approximately $84,000 Maroon could have earned if it had done work under the amended Prime Contract. (Dkt. 79, 9).

As this Court already ruled, "[t]he two damage numbers cited by Maroon arise out of a wrongful termination claim, not a claim for failure to timely pay invoices." (August 26 Order, p. 9). The Amended Complaint does not contain facts from which the Court can infer that Unison's breach of provisions requiring it to submit

9

documentation to LAWA caused Maroon's damages. *See In re Ill. Bell Tel. Link-Up II*, 373 Ill.Dec. 784, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013) ("Damages which are not the proximate cause of the breach are not allowed.").[3] Thus Maroon has failed to state a breach of contract claim in Count I and that count is dismissed with prejudice.

## IV. Count II – Breach of Contract (Wrongful Termination)

In Count II, Maroon claims that Unison wrongfully removed it from the survey project.

### A. Third-party Beneficiary

As an initial matter, the Court agrees with Maroon that it has sufficiently pled that it is a third-party beneficiary to the 2016 Prime Contract.[4] Illinois law permits a third party to a contract to sue for breach if the contract "intended to confer a benefit" on the third party. *Advanced Concepts Chi., Inc. v. CDW Corp.*, 938 N.E.2d 577, 581 (Ill. App. Ct. 2010). The benefit must be "direct or substantial." *Id.*; *see also Town & Country Bank v. James M. Canfield Contracting Co.*, 370 N.E.2d 630, 635 (Ill. App. Ct. 1977) (contract does not have to be for third party's sole benefit). Unison does not dispute that Maroon benefited from the 2016 Prime Contract but argues that the benefit was only incidental. (Dkt. 77 at 14).

---

[3] *O'Connor Constr. Co., Inc. v. Belmont Harbor Home Dev., LLC*, 909 N.E.2d 294 (Ill. App. Ct. 2009) does not help Maroon since in that case the contractor failed "to provide the necessary materials in a timely fashion and fail[ed] to provide a schedule that would have permitted O'Connor to fully perform its contractual obligations." *Id.* at 298. Maroon does not allege any similar facts here.

[4] In light of this finding, the Court need not address the parties' dispute about whether the subcontract incorporated the prime contract.

In bidding for the project, Unison submitted and signed an SBE Affidavit, which stated that LAWA's SBE program "was created to provide additional opportunities for small businesses to participate in LAWA contracts." (Dkt. 73-2, 1). Unison committed to achieving 38% SBE participation on the project. *Id*. Maroon is a SBE recognized under LAWA's SBE Program. (Dkt. 73, ¶ 26). In the 2016 Prime Contract, Unison agreed to the following:

- Unison was required to "submit all pertinent timesheets for itself, and for all subcontractors." §5.10.
- "[Unison] shall include, in any and all subcontractor agreements under this Contract a provision setting forth the record retention requirements specified in this paragraph." §5.11.
- "[Unison]…shall pay to any subcontractor, not later than seven (7) days after receipt of each payment from LAWA, the respective amounts allowed [Unison] on account of the work performed by the subcontractor." §5.13.1.
- "[Unison] shall provide the persons listed below to perform the services attributed to such persons in [Unison's] Proposal, Exhibit B hereto. The persons listed below [including Maroon's Dr. Celious] are hereby designated as Key Persons under this Contract….the services attributed to such persons in [Unison's] Proposal shall be performed and provided by such Key Persons. [Unison] shall not remove or replace the Key Persons below, nor may his or her agreed-upon function or level of commitment be changed, without prior written consent of the City." §9.1.
- "[Unison] hereby agrees and obligates itself to utilize the services of the Small Business Enterprise (SBE) firms designated in its Proposal on the level designated in its Proposal." §22.1.
- Unison agreed to "strictly comply with all of the Rules and Regulations of LAWA's SBE Pilot Program," and failure to comply would result in penalties. §§22.2; 22.3.
- Unison agreed to submit monthly SBE Utilization Forms. LAWA would not process or pay Unison's subsequent invoices if Unison failed to provide any and all requested information about SBE participation. §22.4.
- "Failure to comply with any of the terms of this Section [Small Business Enterprise] shall constitute a material breach of contract…" §22.5.

All of these provisions support Maroon's assertion that it was a direct beneficiary of the 2016 Prime Contract. *See Advanced Concepts Chi., Inc.*, 938 N.E.2d at 584

11

(contract requiring a contractor to enter into an agreement with a subcontractor and submit affidavits confirming payments was for the direct benefit of named subcontractor); *E. Peoria Cmty. High Sch. Dist. No. 309 v. Grand Stage Lighting Co.*, 601 N.E.2d 972, 975 (Ill. App. Ct. 1992) (finding that agreement requiring one party to implement a procedure for paying subcontractors, pay subcontractors promptly, and submit evidence of payment was for the direct benefit of the subcontractors); *Org. of Minority Vendors, Inc. v. Illinois Cent. Gulf R.R.,* 579 F. Supp. 574, 601 (N.D. Ill. 1983) (plaintiffs, minority business enterprises, were third-party beneficiaries to government funding agreements construed as requiring railroads to practice non-discrimination and take steps to benefit MBEs).

### B. Wrongful Termination

Having determined that Maroon has sufficiently alleged it was a third-party beneficiary to the 2016 Prime Contract, the Court finds that Maroon has stated a claim for wrongful termination. Maroon alleges that Unison's removal of Dr. Celious from the project "without prior written consent of the City" violated Sections 9.1 and 22.1 of the 2016 Prime Contract. (Dkt. 73, p.16, ¶¶ 80-85). Maroon also claims that Unison's termination of the 2016 Subcontract did not utilize Maroon "on the level designated" in the Prime Bid and altered the "SBE Subcontract amount . . . without prior written approval." (*Id.*). Section 9.1 of the Prime Contract states that Unison must engage "Key Persons", including Dr. Celious. (Prime Contract, §9.1). Further Unison "shall not remove or replace the Key Persons [], nor may his or her agreed-upon function or level of commitment be changed, without prior written consent of

12

City." *Id*. Section 22.1 required Unison to utilize the services of SBE firms on the level designated in its proposal. *Id*. § 22.1. And the 2016 Subcontract states that the services provided thereunder are subject to the terms of the Prime Contract. (Subcontract, §17).

Maroon alleges that Unison breached these provisions by terminating Maroon without LAWA's approval and by failing to utilize Maroon as required under the SBE rules. As a result, Maroon suffered damages because it was deprived the full amount of the subcontract and the amount of the amended subcontract. (Dkt. 73, p.17, ¶¶ 87-88). In response, Unison contends that LAWA approved Anik as a "backup subcontractor." (Dkt. 77, 7). But that does not undermine Maroon's claim. Maroon alleges that it was removed or replaced without the City's approval and as of March 2017, PSD informed Maroon that it had "not approved a request for substitution," even though Unison terminated Maroon in January 2017. (Dkt. 73, ¶¶59, 65, 80). Each party also argues that the other committed the first material breach, but that issue would require resolution of factual disputes which is inappropriate at this pleading stage.

The Court finds that Maroon has alleged facts sufficient to state a cause of action for breach of contract based on wrongful termination.

### V. Count III – Violation of California Subletting and Subcontracting Fair Practices Act

Under California's Subletting and Subcontract Fair Practices Act, a contractor substituting or removing a subcontractor on a prime contract must follow a required procedure. § 4107 provides:

> Prior to approval of the prime contractor's request for the substitution, the awarding authority, or its duly authorized officer, shall give notice in writing to the listed subcontractor of the prime contractor's request to substitute and of the reasons for the request. The notice shall be served by certified or registered mail to the last known address of the subcontractor. The listed subcontractor who has been so notified has five working days within which to submit written objections to the substitution to the awarding authority. Failure to file these written objections constitutes the listed subcontractor's consent to the substitution.
>
> If written objections are filed, the awarding authority shall give notice in writing of at least five working days to the listed subcontractor of a hearing by the awarding authority on the prime contractor's request for substitution. (Cal. Pub. Cont. Code § 4107(a)(9)).

California law allows for a deviation from Section 4107 "so long as the procedure used actually complies in substance with the reasonable objectives of the statute." *Titan Elec. Corp. v. Los Angeles Unified Sch. Dist.*, 160 Cal. App. 4th 188, 193 (2008). Unison does not dispute that it removed Maroon from the project, but argues that procedural flexibility is permitted under the Act. (Dkt. 83, 14). However, Maroon alleges that Unison terminated the subcontract without *any* notice, opportunity to file objections or for a hearing, and without approval by LAWA. (Dkt. 73, p.18, ¶¶82-85). Maroon points to LAWA's acknowledgement in March 2017 that it did not approve a request for substitution. (Dkt. 73, ¶65).

Unison's reliance on the unpublished opinions in *Mako Invs., LLC v. West Coast Contractors of Nev., Inc.*, 2016 WL 5683043 (Cal. App. 2016) and *J. Kel Painting & Wallcovering, Inc. v. Burbank Unified Sch. Dist.*, 2008 WL 5391004 (Cal. App. 2008) is not persuasive as those cases involved substantial compliance with the Act. (In addition, the cases were decided after trial or on review of all of the evidence). Unison

14

does not dispute that no notice, opportunity to object, or hearing was provided to Maroon "*[p]rior to* approval of the prime contractor's request for the substitution." § 4107 (emphasis added). Unison's reliance on Maroon's submission of a complaint to the City under the Contractor Responsibility Program (CRP) after Unison terminated Maroon is also not persuasive. Unison does not cite any authority that Maroon's CRP complaint shows that Unison complied with § 4107.

Taking Maroon's allegations as true at this pleading stage, Maroon has stated a claim under the California Subletting and Subcontracting Fair Practices Act.

## VI. Count IV – Business Defamation

Maroon alleges that Unison's statements to LAWA defamed Maroon. Under Illinois law, to state a claim for defamation, the plaintiff must show: (1) falsity; (2) unprivileged publication to a third party; and (3) damages. *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). This Court previously held that some of Unison's allegedly false statements were true and that Unison's statements to the City were made in a business capacity and thus privileged. (August 26 Order).

"An otherwise defamatory statement is not actionable if made under a qualified privilege." *Philips v. Quality Terminal Servs., LLC*, 855 F.Supp.2d 764, 786 (N.D. Ill. 2012). Illinois law confers a privilege upon statements made within a legitimate business context. *Id.* To overcome the privilege, "the burden is on [Maroon] to allege facts from which actual malice may be inferred, and the burden is not met if the plaintiff merely sets forth bare allegations, unsupported by facts, that the defendant acted maliciously, with knowledge of the falsity or with wanton disregard

15

for the rights of others." *Genelco, Inc. v. Bowers,* 536 N.E.2d 783, 786 (Ill. App. Ct. 1989); *see also Certified Mech. Contractors, Inc. v. Wight & Co.*, 515 N.E.2d 1047, 1054 (Ill. App. Ct. 1987) (actual malice is a "positive desire and intention to annoy or injure another.").

Maroon broadly claims that Unison was aware of the falsity of its statements and made the statements "with malice and/or reckless disregard for the truth." (Dkt. 73, p.20-21, ¶¶ 77-83). These generalized allegations do not demonstrate that Maroon has met its burden. Since Maroon cannot overcome the privilege, it has not stated a claim for business defamation. Count IV is dismissed with prejudice.[5]

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss [76] is granted in part and denied in part. Counts I and IV are dismissed with prejudice. Counts II and III survive the motion to dismiss. Defendant shall answer these remaining counts by July 26, 2021.

E N T E R:

Dated: July 6, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[5] The Court is dismissing with prejudice Counts I and IV since those claims were alleged in the first complaint and the deficiencies have not been cured.